JAMES W. TUFTS *vs.* ALONZO SYLVESTER.

Franklin. Opinion March 1, 1887.

*Stoppage in transitu. Insolvency. Messenger.*

An insolvency messenger cannot, before an assignee is appointed, prevent a seller's right of stoppage in *transitu* by accepting goods from a carrier, after the insolvent purchaser had himself refused to receive the goods in order that they might be reclaimed by the seller.

A messenger in insolvency is merely a middleman, like the carrier himself, on whom no such responsibility rests as to accept or refuse title for the estate.

ON report upon agreed statement of facts.

Trover by a seller of goods against the messenger in insolvency. The facts are stated in the opinion.

*S. Clifford Belcher*, for the plaintiff cited : 1 Benj. Sales, (4 Am. ed.) § § 490, 500, 501 ; Same. American notes by Charles L. Corbin, § § 782, 783, 784, 785, notes *w*, and *x* ; *Lane* v. *Jackson*, 5 Mass. 156 ; *Grout* v. *Hill*, 4 Gray, 361 ; *Scholfield* v. *Bell*, 14 Mass. 39 ; *Seed* v. *Lord*, 66 Maine, 580 ; 29 Am. Dec. 392 note ; *Harris* v. *Pratt*, 17 N. Y. 249 ; *Sutro* v. *Hoile*, 2 Neb. 186.

*H. L. Whitcomb* for defendant.

Inasmuch as the right of stoppage in *transitu* can be exercised only in case of the insolvency of the vendee, it follows that the vendee can never exercise that right; because such an act would amount to an unwarrantable preference in favor of the vendor, over the other creditors of the insolvent, who have an equal right to the goods as assets. *Neate* v. *Ball*, 2 East. 117; *Barnes* v. *Freeland*, 6 T. R. *81; *Bartram* v. *Farebrother*, 4 Bing. 579; Story on Sales, § 324.

The right of stoppage must be exercised before the rights of any third parties intervene. Story on Sales, § 324 and cases cited in note. Benj. on Sales, (Bennett's Ed.) § 500. And notice must be given to the party who actually has the goods in possession at the time. Benj. on Sales, § 1276; Story on Sales, § 325.

The purchaser having become an insolvent and the messenger being vested with all his rights, the delivery to the messenger, or into the store of Wards, put an end to the *transitus*, and determined the right of stoppage. Benj. on Sales, § 1275.

The case of *Grout* v. *Hill*, 4 Gray, 361, has no parallel to this.

But in the note *Hause* v. *Judson*, 29 Am. Dec. (377, on page 392) the reporter in speaking of *Grout* v. *Hill*, (4 Gray, 361) and other kindred cases says, "Perhaps, however, this is more properly speaking, rescission of the contract, if the vendor assents to the refusal by retaking the goods," and cites *Sturtevant* v. *Orser*, 24 N. Y. 538.

PETERS, C. J. The plaintiff sold a bill of goods to be shipped at Boston to the buyer at Farmington in this state. The buyer, becoming insolvent after the purchase, countermanded the order, but not in season to stop the goods. Before the goods came he had gone into insolvency, and a messenger had taken possession of his property. An express company, bringing the goods, tendered them to the buyer, who refused to receive them, but the messenger accepted the goods from the carrier, paying his charges thereon. After this, but before an assignee was appointed, the seller made a demand upon both the carrier and

the messenger, attempting to reclaim his goods. The question, upon these facts, is whether the goods were seasonably stopped *in transitu* to preserve the plaintiff's lien thereon. We think they were. The right of stoppage *in transitu* is favored by the law.

It is clear that the goods did not go into the buyer's possession. He refused to receive them. He had a moral and legal right to do so. Such an act is commended by jurists and judges. He in this way makes reparation to a confiding vendor. " He may refuse to take possession," says Mr. Benjamin, "and thus leave unimpaired the right of stoppage *in transitu*, unless the vendor be anticipated in getting possession by the assignees of the buyer." Benj. Sales, § 858. In *Grout* v. *Hill*, 4 Gray, 361, SHAW, C. J., says : " where a purchaser of goods on credit, finds that he shall not be able to pay for them, and gives notice thereof to the vendor, and leaves the goods in possession of any person, when they arrive, for the use of the vendor, and the vendor, on such notice, expressly or tacitly assents to it, it is a good stoppage *in transitu*, although the bankruptcy of the vendee intervene." See same case at p. 369. 1 Pars. Con. *596, and cases.

The decision of the case, then, turns upon the question whether the messenger could accept the goods and terminate the lien of the vendor. We do not find any authority for it. A bankruptcy messenger acts in a passive capacity — is intrusted with no discretionary powers — acts under mandate of court, or does certain things particularly prescribed by the law which creates the office — is mostly a keeper or defender of property, a custodian until an assignee comes — and he can neither add to or take from the bankrupt's estate. He is to take possession of the "estate" of the insolvent. These goods had not become a part of the estate. He was not at liberty to affirm or disaffirm any act of the insolvent. The law imposes on him no such responsibility. Chancellor Kent says, that the transit is not ended while the goods are in the hands of a carrier or middleman. A messenger has no greater authority, *ex officio*, than a middleman, excepting as the insolvent law expressly prescribes.

In Hilliard's Bankruptcy, p. 101, the office of a messenger is likened to that of a sheriff under a writ; he becomes merely the recipient of property. The title of the assignee, when appointed, dates back of the appointment of a messenger. Until appointment of assignee, the bankrupt himself is a proper person to tender money for the redemption of lands sold for taxes. *Hampton* v. *Rouse*, 22 Wall. 213. See *Stevens* v. *Palmer*, 12 Metc. 464. The case cited by the plaintiff, *Gates* v. *Hoile*, 2 Neb. 186, supports his contention.

*Defendant defaulted.*

WALTON, VIRGIN, LIBBEY, EMERY and HASKELL, JJ., concurred.